Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM SAYRE, | Case No: |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| MCAFEE CORP., SOHAIB ABBASI, GUNTHER BRIGHT, MARY CRANSTON, PETER LEAV, TIM MILLIKIN, EMILY ROLLINS, KATHY WILLARD, JON WINKELRIED, and JEFF WOOLARD, | |
| Defendants. | |

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff William Sayre ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## <u>NATURE OF THE ACTION</u>

1.      This is an action against McAfee Corp. ("McAfee" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a)

1

and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of McAfee by Condor BidCo, Inc. ("Parent") and its wholly owned subsidiary, Condor Merger Sub, Inc. ("Merger Sub").[1]

2.      On January 4, 2022, Defendants caused to be filed with the SEC a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") in connection with the Proposed Transaction.

3.      The Proxy Statement, which recommends that McAfee shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) McAfee's financial projections; (ii) the financial analyses performed by McAfee's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs"), in connection with its fairness opinion; and (iii) potential conflicts of interest involving Company insiders.

4.      These material misrepresentations and omissions prevent the Company's shareholders from making a fully informed voting decision on the Proposed Transaction or appraisal decision.

5.      Accordingly, the Company's shareholders will be irreparably harmed if these material misrepresentations and omissions are not remedied before the anticipated February 9, 2022 shareholder vote on the Proposed Transaction.

**JURISDICTION AND VENUE**

6.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

---

[1] Parent and Merger Sub are affiliated with private equity firms Advent International Corporation and Permira Advisers LLC.

7.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York.

9.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

10.     Plaintiff is, and has been at all relevant times hereto, an owner of McAfee common stock.

11.     Defendant McAfee provides various integrated security, privacy, and trust solutions to consumers in the United States and internationally. The Company was incorporated in Delaware in 2019. The Company completed an IPO in October 2020 at $20.00 per share. The Company's common stock trades on the NASDAQ under the ticker symbol, "MCFE."

12.     Defendant Sohaib Abbasi ("Abbasi") is a director of the Company

13.     Defendant Gunther Bright ("Bright") is a director of the Company.

14.     Defendant Mary Cranston ("Cranston") is a director of the Company.

15.     Defendant Peter Leav ("Leav") is President, Chief Executive Officer ("CEO"), and a director of the Company.

16.     Defendant Tim Millikin ("Millikin") is a director of the Company.

17.     Defendant Emily Rollins ("Rollins") is a director of the Company.

18.     Defendant Kathy Willard ("Willard") is a director of the Company.

19.     Defendant Jon Winkelried ("Winkelried") is a director of the Company.

20.     Defendant Jeff Woolard ("Woolard") is a director of the Company.

21.     Defendants Abbasi, Bright, Cranston, Leav, Millikin, Rollins, Willard, Winkelried, and Woolard are collectively referred to herein as the "Individual Defendants."

22.     Defendants McAfee and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.  The Proposed Transaction

23.     On November 8, 2021, McAfee announced that it would be acquired by an investor group for $26.00 per share in cash. The press release announcing the Proposed Transaction states, in pertinent part:

### McAfee to Be Acquired by an Investor Group for over $14 Billion

*McAfee shareholders to receive $26.00 per share in cash*

- The transaction is valued at over $14 billion

- The purchase price represents a premium of approximately 22.6% over McAfee's closing share price of $21.21 on November 4, 2021

- Investor Group comprised of Advent, Permira, Crosspoint Capital, CPP Investments, GIC and ADIA

November 08, 2021 08:30 AM Eastern Standard Time

SAN JOSE, Calif.--(BUSINESS WIRE)--McAfee Corp. (NASDAQ:MCFE, "McAfee"), a global leader in online protection, today announced it has entered into a definitive agreement to be acquired by an investor group led by Advent International Corporation ("Advent") and Permira Advisers LLC ("Permira"), Crosspoint Capital Partners ("Crosspoint Capital"), Canada Pension Plan Investment Board ("CPP Investments"), GIC Private Limited ("GIC"), and a

wholly owned subsidiary of the Abu Dhabi Investment Authority ("ADIA") (collectively, "the Investor Group").

As part of the transaction, the Investor Group will acquire all outstanding shares of McAfee common stock for $26.00 per share in an all-cash transaction valued at approximately $12 billion on an equity value basis, and over $14 billion on an enterprise value basis after giving effect to repayment of McAfee debt. The purchase price represents a premium of approximately 22.6% over McAfee's closing share price of $21.21 on November 4, 2021, the last trading day prior to media reports regarding a potential sale of McAfee.

Upon completion of the transaction, the Investor Group will take ownership of McAfee. As a privately held company, McAfee will continue building on its success and proven track record of growth as a pure-play consumer cybersecurity leader following the sale of McAfee's Enterprise business, and the associated one-time dividend of $4.50 per share, to private equity firm Symphony Technology Group for $4.0 billion, which closed on July 27, 2021.

"This transaction is a testament to McAfee's market-leading online protection solutions, our talented employees, and outstanding customers and partners," said McAfee President and Chief Executive Officer, Peter Leav. "We want to thank our employees for their continued hard work and commitment to McAfee. We are thrilled to be partnering with premier firms who truly understand the cybersecurity landscape and have a proven track record of success."

In 2017, TPG partnered with Intel to carve out McAfee from Intel's core operations to establish a pure-play cybersecurity company with access to significant capital, operational and technology resources. McAfee completed its initial public offering last year, with TPG and Intel remaining as shareholders in the company.

Jon Winkelried, Chief Executive Officer of TPG and Chair of the McAfee Board, commented: "Today's announcement signals continued growth and opportunity for McAfee. Over the last four years, the company has expanded its product portfolio, enhanced its go-to-market strategy, and pursued strategic M&A, including the divestiture of its enterprise business. We're proud that today McAfee is a leading consumer cybersecurity franchise, protecting the digital lives of 20 million subscribers across the globe."

Tim Millikin, Partner at TPG and McAfee Board member, added: "It's been a privilege to have partnered with McAfee and its leadership team to help navigate the company's transformation and growth over the last four years. Our partnership with McAfee reflects TPG's focus on investing in growth to build companies that are driving differentiated value in their markets."

"McAfee is one of the most trusted brands in the essential business of consumer digital protection," said Bryan Taylor, Head of Advent's Technology Investment Team and a Managing Partner in Palo Alto. "As consumers face new and complex

cyber risks, we see tremendous opportunity to build on McAfee's differentiated technology platform to continue delivering innovative solutions that can protect all facets of the digital lives of people around the world. We look forward to working alongside our investment partners and the talented McAfee team to continue setting the bar for consumer digital protection."

Brian Ruder, Co-Head of Technology at Permira, commented: "The need for personalized, innovative, and intuitive online protection services has never been greater. McAfee boasts an enviable brand, extensive partner ecosystem, loyal customer base and a rigorous commitment to product development. With our extensive experience in scaling global consumer technology and cybersecurity businesses, we are excited to work closely with McAfee and our fellow investors to help position the company for even greater heights."

Greg Clark, Managing Partner at Crosspoint Capital and former Chief Executive Officer of Symantec added: "The risks that consumers face from all aspects of their digital lives is immense, and these risks are unprecedented and rapidly increasing. Consumers buy from brands they trust, and with the globally recognized brand of McAfee, we see the long term opportunity to deliver products and services to address these risks in all aspects of their digital presence."

Collectively, the Investor Group will provide McAfee with both financial and operational resources to further enhance its consumer offering and capture the rapid growth in consumer demand for digital protection services. McAfee's strong brand awareness, diversified distribution model and customer-centric approach has made it a clear leader in the rapidly evolving consumer online protection space. The Investor Group will support McAfee as it continues to broaden its differentiated online protection solutions and drive long-term value through market expansion.

**Transaction Details**

Under the terms of the agreement, which has been approved by the McAfee Board of Directors, McAfee shareholders will receive $26.00 in cash for each share of common stock they own.

The transaction is expected to close in the first half of 2022, subject to customary closing conditions, including, among others, approval by McAfee shareholders, receipt of regulatory approvals, and clearance by the Committee on Foreign Investment in the United States. Intel Americas, Inc. and certain funds affiliated with TPG Global, LLC have entered into a voting agreement pursuant to which they have agreed, among other things, to vote their shares of company stock in favor of the transaction, subject to certain conditions. The voting support under the voting agreement ceases automatically if the merger agreement is terminated or if the McAfee board makes an adverse recommendation change. These stockholders currently represent approximately 67.9% of the current outstanding voting power of the McAfee common stock.

Consistent with the McAfee Board's commitment to maximizing stockholder value, under the terms of the definitive merger agreement, McAfee's Board and advisors may actively initiate, solicit and consider alternative acquisition proposals during a 45-day "go shop" period. McAfee has the right to terminate the merger agreement to accept a superior proposal during the go-shop period, subject to the terms and conditions of the merger agreement. There can be no assurances that this process will result in a superior proposal, and McAfee does not intend to disclose developments with respect to this solicitation process unless and until McAfee's Board makes a determination requiring further disclosure.

The buyer entity in the merger, Condor BidCo, Inc. ("Parent"), has obtained equity financing and debt financing commitments for the purpose of financing the transactions contemplated by the merger agreement. Funds advised by the Investor Group have committed to capitalize Parent at the closing of the merger with an aggregate equity contribution equal to $5.2 billion on the terms and subject to the conditions set forth in signed equity commitment letters.

The Investor Group has obtained a commitment from JPMorgan Chase Bank, N.A., Bank of America, N.A., Credit Suisse AG, Cayman Islands Branch, Barclays Bank PLC, Citibank, N.A. (and/or its affiliates), HSBC Bank USA, National Association, Royal Bank of Canada, CPPIB Credit Investments III Inc., UBS AG, Stamford Branch and PSP Investments Credit II USA LLC to provide debt financing consisting of a $6.66 billion first lien term loan facility, a $1 billion first lien cash flow revolving facility and a $2.32 billion senior unsecured bridge facility (which may be replaced with senior notes issued through a Rule 144A or other private placement), subject, in each case, to customary conditions. PSP Investments Credit USA LLC and investment funds managed by Neuberger Berman have agreed to provide the Investor Group with preferred equity financing with an aggregate liquidation preference of up to $800 million, subject to customary conditions.

Upon completion of the transaction, McAfee common stock will no longer be listed on any public securities exchange.

**Third Quarter Earnings Conference Call Update**

Separately, McAfee will announce today its third quarter financial results, which will be available on the "Investor Relations" section of the McAfee website. In light of the announced transaction with the Investor Group, McAfee has cancelled the earnings call previously scheduled for Tuesday, November 9, 2021.

**Advisors**

Goldman Sachs & Co. LLC and Morgan Stanley & Co. LLC are serving as financial advisors to McAfee and Ropes & Gray and Moulton Moore Stella are serving as legal counsel. JP Morgan Securities LLC, BofA Securities, Inc., Barclays Capital Inc. and Citigroup Global Markets Inc. are serving as financial advisors, with Bryant Stibel Group serving as strategic operating advisors to the Investor Group.

Fried, Frank, Harris, Shriver & Jacobson are acting as M&A legal counsel and Kirkland & Ellis are acting as Finance legal counsel to the Investor Group.

The debt financing for the transaction is being provided by JPMorgan Chase Bank, N.A., Bank of America, N.A., BofA Securities, Inc., Credit Suisse AG, Cayman Islands Branch, Credit Suisse Loan Funding LLC, Barclays Bank PLC, Citigroup Global Markets Inc., HSBC Securities (USA) Inc., HSBC Bank USA, National Association, Royal Bank of Canada, RBC Capital Markets LLC, CPPIB Credit Investments III Inc., UBS AG, Stamford Branch, UBS Securities LLC and PSP Investments Credit II USA LLC, and the preferred equity financing is being arranged and provided by PSP Investments Credit USA LLC and investment funds managed by Neuberger Berman.

**About McAfee**

McAfee Corp. (Nasdaq: MCFE) is a global leader in online protection for consumers. Focused on protecting people, not just devices, McAfee consumer solutions adapt to users' needs in an always online world, empowering them to live securely through integrated, intuitive solutions that protect their families and communities with the right security at the right moment. For more information, please visit https://www.mcafee.com/consumer.

**About Advent International**

Founded in 1984, Advent International is one of the largest and most experienced global private equity investors. The firm has invested in over 380 private equity investments across 42 countries, and as of June 30, 2021, had $81 billion in assets under management. With 15 offices in 12 countries, Advent has established a globally integrated team of over 245 private equity investment professionals across North America, Europe, Latin America and Asia. The firm focuses on investments in five core sectors, including business and financial services; health care; industrial; retail, consumer and leisure; and technology. After 35 years dedicated to international investing, Advent remains committed to partnering with management teams to deliver sustained revenue and earnings growth for its portfolio companies. For more information, visit: www.adventinternational.com or www.linkedin.com/company/advent-international.

**About Permira**

Permira backs growth at scale. Founded in 1985, the firm advises funds with total committed capital of approximately US$50bn (€44bn) and makes long-term majority and minority growth investments. The Permira funds have an extensive track record in tech and tech-enabled investing, with a particular focus on digital consumer and enterprise cloud end markets . Permira employs over 350 people in 15 offices across Europe, North America, and Asia. The Permira funds have previously backed and helped scale some of the largest and fastest growing

software, e-commerce and consumer technology businesses globally, including Exclusive Group, Ancestry.com, LegalZoom, Adevinta, Klarna, Genesys, Informatica and many others. For more information, visit www.permira.com.

**About Crosspoint Capital Partners**

Crosspoint Capital Partners is a private equity investment firm focused on the cybersecurity, privacy and infrastructure software markets. Crosspoint has assembled a group of highly successful operators, investors and sector experts to partner with foundational technology companies and drive differentiated returns. Crosspoint has offices in Menlo Park, CA and Boston, MA. For more information visit: www.crosspointcapital.com.

**About CPP Investments**

Canada Pension Plan Investment Board (CPP Investments™) is a professional investment management organization that manages the Fund in the best interest of the more than 20 million contributors and beneficiaries of the Canada Pension Plan. In order to build diversified portfolios of assets, investments are made around the world in public equities, private equities, real estate, infrastructure and fixed income. Headquartered in Toronto, with offices in Hong Kong, London, Luxembourg, Mumbai, New York City, San Francisco, São Paulo and Sydney, CPP Investments is governed and managed independently of the Canada Pension Plan and at arm's length from governments. On June 30, 2021, the Fund totaled C$519.6 billion. For more information, please visit www.cppinvestments.com or follow us on LinkedIn, Facebook or Twitter.

**About TPG**

TPG is a leading global alternative asset firm founded in San Francisco in 1992 with $108 billion of assets under management and investment and operational teams in 12 offices globally. TPG invests across five multi-product platforms: Capital, Growth, Impact, Real Estate, and Market Solutions. TPG aims to build dynamic products and options for its clients while also instituting discipline and operational excellence across the investment strategy and performance of its portfolio. For more information, visit www.tpg.com or @TPG on Twitter.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

24. The Proxy Statement omits and/or misrepresents material information concerning, among other things: (i) McAfee's financial projections; (ii) the financial analyses performed by McAfee's financial advisor, Goldman Sachs, in connection with its fairness opinion; and (iii) potential conflicts of interest involving Company insiders.

25.     The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Recommendation of the Board of Directors and Reasons for the Merger; (ii) Opinion of Goldman Sachs & Co. LLC; and (iii) Certain Projected Financial Information.

26.     Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, the Company's shareholders will be forced to make a voting decision or appraisal decision without full disclosure of all material information.

**1.     Material Omissions Concerning McAfee's Financial Projections**

27.     The Proxy Statement omits material information concerning McAfee's financial projections.

28.     With respect to McAfee's financial projections for the fiscal years 2021 to 2024 (the "May 29 Projections") and for the fiscal years 2021-2025 (the "Management Projections"), the Proxy Statement fails to disclose: (1) all line items underlying Gross Revenue, Net Revenue, Gross Margin, Adjusted EBITDA, and Unlevered Free Cash Flow; and (2) a reconciliation of all non-GAAP to GAAP metrics.[2]

29.     The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such

---

[2] The Management Projections resulted in lower forecasted growth in McAfee's EBITDA, as compared to the May 29 Projections, among other updates. *See* Proxy Statement at 45, 60-61. As a result, the omitted information is even more material to shareholders.

information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction or seek appraisal.

30.     When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP.

31.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**2.   Material Omissions Concerning Goldman Sachs' Analyses**

32.     In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Goldman Sachs.

33.     With respect to Goldman Sachs' "*Implied Premia and Multiples*" analysis, the Proxy Statement fails to disclose: (1) the total number of fully diluted outstanding shares of McAfee utilized in the analysis; and (2) McAfee's net debt as of September 25, 2021.

34.     With respect to Goldman Sachs' "*Selected Public Company Comparables*" analysis, the Proxy Statement fails to adequately disclose Goldman Sachs's basis for selecting only two purportedly comparable companies.

35.     The Proxy Statement fails to disclose the following concerning Goldman Sachs' "*Illustrative Discounted Cash Flow Analysis*": (1) the terminal year estimate of free cash flows to

be generated by McAfee and all line items underlying the free cash flows; (2) the individual inputs and assumptions underlying the (i) discount rates ranging from 7.5% to 8.5%, (ii) NTM adj. EBITDA multiples ranging from 8.4x to 12.7x, and (iii) perpetuity growth rates ranging from 1.0% to 2.5%; (3) the terminal values for McAfee; (4) McAfee's net debt as of September 25, 2021; and (5) the number of fully diluted outstanding shares of McAfee as utilized in the analysis.

36.     The Proxy Statement fails to disclose the following concerning Goldman Sachs' "*Illustrative Present Value of Future Share Price Analysis*": (1) McAfee's forecasted net debt as of December 31, 2021 to 2023; (2) the individual inputs and assumptions underlying the illustrative discount rate of 8.5% and NTM Adj. EBITDA multiples of 10x to 14x; (3) the forecasted dividends through each of the years 2021 to 2023, as purportedly provided by McAfee management; and (4) the number of projected year-end fully diluted outstanding shares of McAfee stock for each of the years 2021 to 2023.

37.     With respect to Goldman Sachs' "*Selected Transactions Analysis*," the Proxy Statement fails to disclose: (1) the date each selected transaction closed; (2) the total value of each transaction; and (3) the individual inputs and assumptions used to select a reference range of EV/NTM EBITDA multiples of 11.1x to 19.0x.

38.     With respect to Goldman Sachs' "*Premia Paid Analysis*," the Proxy Statement fails to disclose the transactions observed and the premiums paid in each transaction therein, as well as Goldman Sachs' rationale for analyzing the premiums in "all-cash acquisition transactions announced from 2012 through November 4, 2021, involving a public company based in the United States as the target where the disclosed enterprise values for the transaction was greater than $1 billion."

39.     The valuation methods, underlying assumptions, and key inputs used by

12

Goldman Sachs in rendering its purported fairness opinion must be fairly disclosed to McAfee shareholders to enable shareholders to make a fully informed decision on the Proposed Transaction and whether to seek appraisal. The description of Goldman Sachs' fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses.

40.     Without the information described above, McAfee shareholders are unable to fully understand Goldman Sachs' fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction or in deciding whether to seek appraisal.

41.     This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

42.     The Proxy Statement omits material information concerning potential conflicts of interest involving Company insiders.

43.     More specifically, the Proxy Statement fails to adequately disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

44.     Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

45.     The above-referenced omitted information, if disclosed, would significantly alter

the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

46.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

48.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

49.     The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction or in determining whether to seek appraisal.

50.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

51.     Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

52.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

54.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

55.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements

or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

56.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

57.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: January 25, 2022                    Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
         zhalper@halpersadeh.com

*Counsel for Plaintiff*